IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| GREG LANCE, | ) |
|     Plaintiff, | ) |
| v. | ) No. 3:12-cv-757 |
| WILLIAM LOCKE, | ) Judge Campbell |
| CAROLYN JENNINGS, | ) |
| LAUREN ZECHMAN, | ) |
| JACQUELINE POWELL, | ) |
| DEPARTMENT OF CHILDREN'S SERVICES, | ) |
| TRACY CATEN, | ) |
| JUDY POLLARD, | ) |
|     Defendants. | ) |

## MEMORANDUM OPINION

Plaintiff Greg Lance, proceeding *pro se*, brings this action for damages and injunctive relief under 42 U.S.C. § 1983, asserting violations of his Fourteenth Amendment due-process and equal-protection rights, and his First Amendment rights to make decisions concerning the upbringing of his child. He also alleges state-law causes of action for intentional and negligent infliction of emotional distress. The plaintiff is a state prisoner incarcerated at the Northwest Correctional Complex in Mountain City, Tennessee. Because he is a prisoner who proceeds *in forma pauperis* against government officials, the complaint is before the Court for initial review pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(a), and *McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997), *reversed on other grounds by Jones v. Bock*, 549 U.S. 199 (2007).

### I. FACTUAL ALLEGATIONS

The plaintiff names as defendants Warren County Juvenile Court Judge William Locke; the Tennessee Department of Children's Services ("D.C.S."); D.C.S. Attorneys Tracy Caten and Carolyn Jennings; D.C.S. Case Manager Jacqueline Powell; Guardian *ad Litem* Lauren Zechman; and Judy Pollard.

Mr. Lance alleges that he is the biological father of R.L., a minor child. R.L. was in the custody of her mother, Cynthia Womack, after Mr. Lance was incarcerated. In November 2011, Ms. Womack's mother (R.L.'s maternal grandmother), Judy Pollard, reported to D.C.S. that R.L. had been exposed to drugs and was being neglected or abused by her mother. D.C.S. filed a second Petition to Declare Children [sic] Dependent

and Neglected and for Emergency Temporary Custody to Kin, on the basis that R.L. was neglected as a result of Ms. Womack's drug use.

Mr. Lance asserts that, although he has been in prison, he has at all times been ready, willing and able to ensure that the physical, emotional, and special needs of R.L. are met. He notified D.C.S. counselor Tracy Caten that, if D.C.S. investigator Chris George determined that R.L. needed to be removed from her mother's custody, Mr. Lance preferred that she be placed with his mother, Joyce Argo, "so that [R.L.] would be able to sleep in her own bed and be safe and secure with family." (ECF No. 1, at /p/ 17.) R.L., who is thirteen years old, allegedly also expressed a preference for being placed with her paternal grandmother, and Ms. Argo wants R.L. to live with her.

Instead, in defiance of Mr. Lance's expressed preference and without notice to the plaintiff, D.C.S. personnel and/or the Warren County Juvenile Court placed R.L. with her maternal grandmother, Judy Pollard, solely because Ms. Pollard had already been qualified as a foster parent. Mr. Lance alleges that he "begrudgingly" agreed to the temporary placement of R.L. with Judy Pollard, but with the expectation that R.L.'s mother, Cynthia Womack, would be able to regain custody. Ms. Womack, however, was killed in a car accident on February 10, 2012, leaving Mr. Lance as the only surviving biological parent of R.L. The plaintiff alleges that around the same time, Ms. Pollard's home was in the process of being repossessed, and he is concerned about R.L.'s emotional and physical well-being if she should be placed long-term with her maternal grandmother. Mr. Lance gave the court notice that he authorized his mother, Joyce Argo, to act on his behalf with regard to R.L.

Mr. Lance alleges that D.C.S. conducted various meetings and hearings in late 2009[1] regarding which he received late or no notice, and no opportunity to participate. A summons was issued on December 6, 2011 requiring Mr. Lance's appearance at a hearing on D.C.S.'s petition on December 12, 2011, but the summons was not served on him sufficiently in advance of the hearing to give him the opportunity to attend and participate. The petition to find R.L. dependent and neglected and to grant temporary custody to Judy Pollard was granted on December 12, 2011 by Judge Locke without Mr. Lance's participation. Further, the Juvenile Court falsely stated in its January 11, 2012 order making R.L. a ward of the court that Mr. Lance had

---

[1] The dates in the complaint are confusing and appear to be incorrect in places. These hearings and meetings may have taken place in 2011.

stipulated that the child was "dependent and neglected." (ECF No. 1, at 4.)

At a hearing on July 9, 2012, Judge Locke indicated that he would not consider or grant any of Mr. Lance's requests based solely on Mr. Lance's incarceration. The judge set a hearing for July 23, 2012 for the purpose of terminating Mr. Lance's parental rights, again solely on the basis that Mr. Lance is incarcerated. (The complaint was filed on July 23, 2012, so the outcome of this hearing is not reflected in the complaint.) Mr. Lance asserts that because the child's mother is deceased, the only reason for the State's jurisdiction in this case no longer exists. He alleges that under Tennessee law, guardianship of the child devolves to him as a result of Ms. Womack's death and that, pursuant to Tennessee law, he has executed a power of attorney delegating his mother, Joyce Argo, as the temporary caregiver and custodian of R.L. In addition, R.L. has stated that her preference is to remain in her father's custody and to live with her paternal grandmother, Joyce Argo, and this preference has been communicated to the guardian *ad litem*, Lauren Zechman, who refuses to act upon it. The child's preference and Mr. Lance's directive have been ignored by the court and the various authorities involved in this case.

Mr. Lance asserts that, under Tennessee law, the court is required to appoint counsel to indigent, incarcerated parents facing termination of parental rights. Mr. Lance alleges that he has requested counsel but remains unrepresented.[2] He alleges that Judge Locke and the D.C.S. attorneys and personnel have conspired with Ms. Pollard to terminate Mr. Lance's parental rights, have refused to allow him to be present at the hearings, have failed to give him proper notice and the opportunity to be heard, and failed to appoint him free counsel who is willing and knowledgeable enough to properly represent his interests. Mr. Lance alleges numerous other violations of state law by the D.C.S. proceedings, which he alleges have resulted in violations of his rights under the Due Process Clause of the Fourteenth Amendment and have interfered with the exercise of his parental rights in violation of the First Amendment.

Mr. Lance seeks an injunction ordering the defendants to cease and dismiss the state-court custody proceedings. He also seeks compensatory and punitive damages from all defendants except Judge Locke, whom he sues in his official capacity for injunctive relief only.

Mr. Lance has also filed a motion for a temporary restraining order and preliminary injunction seeking

---

[2] From the record, it actually appears that counsel was appointed to represent Mr. Lance but that he is not happy with the appointed attorney.

the cessation and dismissal of the state-court case.

## II. STANDARD OF REVIEW

Under 28 U.S.C. § 1915(e)(2)(B), the Court must dismiss a civil complaint filed *in forma pauperis*, or any portion thereof, to the extent that it (1) fails to state a claim upon which relief can be granted, or (2) is frivolous. Section 1915A(a) similarly requires initial review of any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." The Sixth Circuit has confirmed that the dismissal standard articulated by the Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), "governs dismissals for failure to state a claim under those statutes because the relevant statutory language tracks the language in Rule 12(b)(6)." *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010). Thus, to survive scrutiny on initial review, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "[A] district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)).

Although *pro se* pleadings are to be held to a less stringent standard than formal pleadings drafted by lawyers, *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972); *Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991), the courts' "duty to be 'less stringent' with *pro se* complaints does not require us to conjure up unpled allegations." *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979) (citation omitted).

## III. ANALYSIS AND DISCUSSION

To state a claim under § 1983, a plaintiff must "identify a right secured by the United States Constitution and deprivation of that right by a person acting under color of state law." *Russo v. City of Cincinnati*, 953 F.2d 1036, 1042 (6th Cir. 1992); *West v. Atkins*, 487 U.S. 42, 48 (1988). Claims against entities or individuals who are not state actors and "persons" subject to suit under § 1983 must be dismissed. Claims that do not state a deprivation of a right secured by the Constitution or federal law must likewise be dismissed. In addition, regardless of whether the complaint states a claim, the Court must consider as a

threshold matter whether subject-matter jurisdiction exists and, if so, whether any defendants are immune from suit. As set forth herein, the Court finds that it is barred by important comity interests from exercising jurisdiction in this action. Moreover, the claims against defendants D.C.S. and Judge Locke are subject to dismissal on the alternative basis that these defendants are immune from suit in this Court.

      **A.** *Rooker-Feldman* **and** *Younger*

The first question raised by the complaint is whether the *Rooker-Feldman* doctrine precludes this Court's exercise of jurisdiction in this case. This doctrine is based on two United States Supreme Court decisions, *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983). The *Rooker-Feldman* doctrine provides that district courts lack subject-matter jurisdiction of "cases brought by state court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Lawrence v. Welch*, 531 F.3d 364, 368 (6th Cir. 2008) (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)). Thus, the *Rooker-Feldman* doctrine precludes federal jurisdiction if the plaintiff (1) lost in state court and (2) complains of injuries caused by the state-court judgment; (3) the subject judgments were rendered before the federal suit was filed; and (4) the plaintiff is inviting the district court to review and reject the state judgments. *Exxon-Mobile*, 544 U.S. at 284. Following *Exxon-Mobile*, the Sixth Circuit Court of Appeals has explained that "[i]f the source of the injury is the state court decision, then the *Rooker-Feldman* doctrine would prevent the district court from asserting jurisdiction. If there is some other source of injury, such as a third party's actions, then the plaintiff asserts an independent claim." *McCormick v. Braverman*, 451 F.3d 382, 393 (6th Cir. 2006); *accord Coles v. Granville*, 448 F.3d 853, 858 (6th Cir. 2006) ("[We] have taken the Supreme Court's guidance on the application of *Rooker-Feldman* and applied the doctrine only when a plaintiff complains of injury from the state court judgment itself.").

Although it appears that final judgment in the underlying state parental-rights proceeding may not have been entered at the time this suit was filed, to the extent Mr. Lance seeks this Court's intervention for the purpose of setting aside one or more state court orders to which he objects regarding the termination of his parental rights and the custody of R.L., this Court lacks jurisdiction under the *Rooker-Feldman* doctrine

to provide the requested relief.[3]  Further, insofar as the complaint may be construed as seeking injunctive relief against *on-going* state-court proceedings, the Court concludes that the requested relief is precluded by the *Younger* abstention doctrine.

This doctrine, derived from the Supreme Court's decision in *Younger v. Harris*, 401 U.S. 37 (1971), applies when "(1) there [are] on-going state judicial proceedings; (2) those proceedings must implicate important state interests; and (3) there must be an adequate opportunity in the state proceedings to raise constitutional challenges."  *Sun Ref. & Mktg. Co. v. Brennan*, 921 F.2d 635, 639 (6th Cir. 1990) (citation omitted).  State proceedings concerning child custody and parental rights clearly implicate important state interests.  *See Moore v. Sims*, 442 U.S. 415 (1979) (applying *Younger* in the context of a case involving the custody of children); *Mann v. Conlin*, 22 F.3d 100, 106 (6th Cir.), *cert. denied*, 513 U.S. 870 (1994) (affirming dismissal of domestic relations claims concerning visitation, custody, and support issues based on *Younger* abstention).  And, at this stage in the proceedings and in light of the plaintiff's ability to pursue an appeal of any state-court judgment, the plaintiff cannot establish that he does not have an adequate opportunity to raise constitutional challenges in the state proceedings.  The Court therefore finds that it is either barred by *Rooker-Feldman* or compelled by the *Younger* doctrine to abstain from exercising jurisdiction in this case.  On that basis alone, the case must be dismissed in its entirety, without prejudice.

### B. D.C.S. Is Entitled to Immunity.

Alternatively and in addition, Mr. Lance's claims against the Tennessee Department of Children's Services are subject to dismissal because D.C.S. is not a "person" subject to suit under § 1983.  Instead, D.C.S. is an agency of the State of Tennessee and, as such, is entitled to Eleventh Amendment immunity.  *Mumford v. Basinski*, 105 F.3d 264, 267 (6th Cir. 1997); *Foster v. Walsh*, 864 F.2d 416, 418 (6th Cir. 1988).  The Eleventh Amendment bars suits against a state, and its agencies or departments, unless the state has

---

[3] As the Third Circuit has noted, a suit that purely seeks appellate review of a state-court judgment terminating parental rights is barred by *Rooker-Feldman*:
> Suppose a state court, based purely on state law terminates a father's parental rights and orders the state to take custody of his son.  If the father sues in federal court for the return of his son on grounds that the state judgment violates his federal substantive due-process rights as a parent, he is complaining of an injury caused by the state judgment and seeking its reversal.

*Great Western Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 166–67 (3d Cir. 2010) (citing *Hoblock v. Albany Cnty. Bd. of Elections*, 422 F.3d 77, 87 (2d Cir. 2005)).

waived its immunity or Congress has abrogated it. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989). The sovereign immunity protected by the Eleventh Amendment extends to claims for injunctive relief and other forms of equitable relief. *See Lawson v. Shelby Cnty., Tenn.*, 211 F.3d 331, 335 (6th Cir. 2000) ("[T]he [Eleventh] Amendment prohibits suits against a 'state' in federal court whether for injunctive, declaratory or monetary relief."). The only exceptions to a State's immunity are (1) if the State has consented to suit or (2) if Congress has properly abrogated a State's immunity. *S & M Brands, Inc. v. Cooper*, 527 F.3d 500, 507 (6th Cir. 2008). Neither of these exceptions applies to § 1983 suits against the State of Tennessee or its agencies. *See Berndt v. Tennessee*, 796 F.2d 879, 881 (6th Cir. 1986) (noting that Tennessee has not waived immunity to suits under § 1983); *Hafer v. Melo*, 502 U.S. 21, 25 (1991) (reaffirming that Congress did not abrogate states' immunity when it passed § 1983). Consequently, D.C.S. may not be sued in this Court.

**C.  Judge Locke Is Not Subject to Suit under § 1983.**

Similarly, the claims against Judge Locke are subject to dismissal on the alternative ground of judicial immunity, even though the plaintiff seeks to sue Judge Locke in his official capacity for injunctive relief only, "[d]ue to his judicial immunity." (ECF No. 1, at 14.)

Judges enjoy absolute immunity from liability for acts undertaken in their judicial capacity. *Pierson v. Ray*, 386 U.S. 547, 553–54 (1967); *Brookings v. Clunk*, 389 F.3d 614, 617 (6th Cir. 2004). This immunity applies unless a judge has (1) acted in a non-judicial way or (2) performed judicial acts in the complete absence of all jurisdiction. *Mireles v. Waco*, 502 U.S. 9, 11 (1991). This form of judicial immunity, however, is not available when a judge is sued in his official capacity. *See Kentucky v. Graham*, 473 U.S. 159, 167 (1985) ("The only immunities that can be claimed in an official-capacity action are forms of sovereign immunity that the entity, *qua* entity, may possess, such as the Eleventh Amendment."); *Alkire v. Irving*, 330 F.3d 802, 810--11 (6th Cir. 2003)("[A]s a result of being sued only in their official capacities, Sheriff Zimmerly and Judge Irving cannot claim any personal immunities, such as quasi-judicial or qualified immunity, to which they might be entitled if sued in their individual or personal capacities").

When, as here, a state court judge is sued in his official capacity, the suit is essentially against the state, as the entity that employs him. *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 68 (1989)). As set forth above, the Eleventh Amendment protects states against liability for money damages, even when an action is filed against a state actor in his or her

official capacity. *See Rodgers v. Banks*, 344 F.3d 587, 594 (6th Cir. 2003) ("Specifically, the Eleventh Amendment bars § 1983 suits seeking money damages against states and against state employees sued in their official capacities."); *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989). The Eleventh Amendment does not, however, prohibit suits against state officers for prospective injunctive or declaratory relief. *Edelman v. Jordan*, 415 U.S. 651, 677 (1974).

However, along with judicial immunity and the shielding provided to state actors by the Eleventh Amendment, judges have received additional protection from Congress. In 1996, 42 U.S.C. § 1983 was amended to prohibit the granting of injunctive relief against judicial officers for acts taken in their judicial capacities, except in situations in which a declaratory decree has been violated or declaratory relief is unavailable. 42 U.S.C. § 1983; *see Kircher v. City of Ypsilanti*, 458 F. Supp.2d 439, 447--48 (2006). The plaintiff has not shown that either of these exceptions applies.

In this suit, Mr. Lance sues Judge Locke in his official capacity as a state court judge and is seeking only injunctive relief under § 1983. Because the allegations in the complaint indicate that Judge Locke was acting in his judicial capacity at all relevant times with regard to the underlying parental rights and child custody suit, he is not subject to injunctive relief under § 1983.

## IV. CONCLUSION

For the reasons set forth herein, the complaint will be dismissed in its entirety, without prejudice. An appropriate order will enter.

Todd Campbell
United States District Judge